MELVIN L. EVANS, Plaintiff-Appellant, v. ABBOTT PRODUCTS, INC.,
Defendant-Appellee.

First District (3rd Division) No. 86—1076

Opinion filed December 10, 1986.

John Bernard Cashion and Peter Francis Geraci, both of Chicago, for appellant.

Fraterrigo, Best & Beranek, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Melvin L. Evans, filed a negligence action after injuring his hand while working as a temporary employee for defendant, Abbott Products, Inc. The trial court dismissed the complaint on the basis that the action was barred by the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*).

Plaintiff's complaint alleges that on September 10, 1984, he was employed by Personnel Pool of Cook County, Inc., and that under an agreement "Personnel Pool supplied temporary factory workers to the defendant." The complaint alleges further that under an agreement with Abbott, Personnel Pool was "required to and did carry workers' compensation insurance for all factory workers it supplied to defendant." Personnel Pool assigned plaintiff to work for Abbott as a temporary factory worker. Shortly after work began on September 10, 1984, plaintiff's hand was crushed in a punch-press machine. The complaint alleges that on the day of the accident, "plaintiff, while working at the aforesaid premises of defendant, was not an employee of defendant."

Defendant filed an answer and an affirmative defense. On May 10, 1985, defendant withdrew its answer and affirmative defense and filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). On February 5, 1986, plaintiff and Personnel Pool filed a settlement contract lump sum petition and order with the Industrial Commission. Personnel Pool, the only named respondent, agreed to pay $16,221.45 plus medical expenses in full settlement of plaintiff's claim. The settlement contract states that plaintiff and Personnel Pool agreed that plaintiff

"was injured on the premises of Abbott Products, Inc. while the [plaintiff] was an employee of [Personnel Pool], and was loaned to Abbott Products, Inc. pursuant to, and consistent with, section 1(a)4 of the Workers' Compensation Act." The parties agreed further that "no sums have been paid by Abbott under the laws of Illinois pertaining to Workers' Compensation."

Abbott's motion to dismiss was subsequently granted, and on March 26, 1986, plaintiff's motion to reconsider that order was denied. At the hearing on the motion to reconsider, the trial court found that the exclusivity provision of the Workers' Compensation Act applies to both the borrowing and loaning employers. Plaintiff appeals.

Initially we note that, unlike most cases involving loaned employees, the liability of Abbott or Personnel Pool for plaintiff's worker's compensation benefits is not at issue here. Personnel Pool has paid those benefits and it is not a party to this action. Plaintiff asserts that under an agreement with Personnel Pool, Abbott had no liability for the workers' compensation benefits. Plaintiff reasons that Abbott, therefore, was not his employer under the Act, and thus plaintiff is not barred from bringing this action against Abbott.

Section 5(a) contains the Act's exclusivity provision, which states that an injured employee retains "[n]o common law or statutory right to recover damages from the employer *** for injury *** sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided." (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a).) Thus, if Abbott is an employer under the Act, plaintiff retains no right to recover damages against defendant.

■ Section 1(a)(4) of the Act defines a loaning employer as an "employer whose business *** consists of *** furnishing employees to or for other employers *** for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4).) Personnel Pool's business consists of furnishing temporary employees to its clients, other employers, for the performance of the work of those clients. In addition, Personnel Pool pays the employees their wages for the work they do for the other employers. Under section 1(a)(4), therefore, Personnel Pool is a loaning employer. Abbott, then, is a borrowing employer. See *Chicago's Finest Workers Co. v. Industrial Com.* (1975), 61 Ill. 2d 340, 335 N.E.2d 434.

Section 1(a)(4) sets forth a priority of payment between the borrowing and lending employers. As the borrowing employer, Abbott is primarily liable under the Act, and Personnel Pool's secondary liabil-

ity comes into being only if Abbott fails to pay. In that event, the "loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursements for all sums paid." Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4).

 Plaintiff here contends that an agreement exists between Abbott and Personnel Pool which reverses this statutory payment priority. While no written agreement exists, plaintiff relies on Personnel Pool's circular to establish the existence of an agreement. The circular attached to Abbott's motion to dismiss states that Personnel Pool will provide workers' compensation insurance for its employees. This circular is insufficient to establish a risk-shifting agreement. (See *Mojonnier, Inc. v. Industrial Com.* (1968), 41 Ill. 2d 128, 242 N.E.2d 184.) Furthermore, the complaint includes only a conclusory allegation regarding the existence of the agreement. This is insufficient under our fact-pleading requirements. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) Thus, for purposes of this motion to dismiss, the liability of Abbott and Personnel Pool for workers' compensation benefits was fixed by the Act, and Abbott was primarily liable as the borrowing employer, notwithstanding the fact that Personnel Pool actually paid those benefits. Because of Abbott's primary liability as a borrowing employer, plaintiff is barred from recovering negligence damages from Abbott. See Ill. Rev. Stat. 1985, ch. 48, par. 138.5(a).

 Even if an agreement shifting the priorities of liability were established, however, plaintiff would be barred from bringing this suit because Abbott would still be considered an employer under the Act. Section 1(a)(4) provides that "as to such employee" the liability of the borrowing and loaning employers is "joint and several." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(a)(4).) It is only "as between the two employers" that liability may be primary or secondary. (*Chicago's Finest Workers Co. v. Industrial Com.* (1975), 61 Ill. 2d 340, 335 N.E.2d 434.) The Act merely sets out the priorities of liability. It does not excuse either employer from liability. Abbott, therefore, remains a borrowing employer as defined in the Act and continues to be jointly and severally liable as to the employee. We hold, therefore, that the exclusivity provision of the Act provides immunity to both borrowing and loaning employers because they both remain jointly and severally liable, regardless of whether they are primarily or secondarily liable under either the statute or an agreement. The trial court did not err in granting Abbott's motion to dismiss the complaint.

 Plaintiff contends that a question of fact remains as to whether he can be considered an employee of Abbott because, *e.g.,*

Personnel Pool retained the right to discharge him, controlled his work assignments, and paid his wages. These factors may be used to determine whether an employer-employee relationship exists. (See, *e.g., Clark v. Industrial Com.* (1973), 54 Ill. 2d 311, 297 N.E.2d 154.) In the present case, however, the existence of an employer-employee relationship is determined under the definition of the rights and duties of loaning and borrowing employers discussed above. Plaintiff clearly is a loaned employee as a matter of law. Moreover, Abbott had a right to control plaintiff's work activities, at least temporarily. Abbott directed plaintiff as to which duties he would perform while working at its place of business. Abbott could dismiss plaintiff from his temporary job with defendant and direct him to report back to Personnel Pool. This authority gives Abbott the right to discharge. See *Highway Insurance Co. v. Sears, Roebuck & Co.* (1968), 92 Ill. App. 2d 214, 235 N.E.2d 309.

■ Plaintiff also argues that he must assent to the loaned-employee relationship before he can acquire the status of a loaned employee. (See *Freeman v. Augustine's Inc.* (1977), 46 Ill App. 3d 230, 360 N.E.2d 1245.) Plaintiff worked for a business which loans its employees on a temporary basis to other employers. By agreeing to work for Personnel Pool and by accepting temporary employment assignments, plaintiff impliedly consented to the loaned-employee relationship. Furthermore, plaintiff worked on the punch-press machine as directed by Abbott. Plaintiff's consent to the employer-employee relationship is shown from his acceptance of Abbott's control and direction as to his work activities. See *A. J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 412 N.E.2d 477; see generally 1C A. Larson, Workmen's Compensation Law sec. 48.15 (1986).

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing plaintiff's complaint is affirmed.

Judgment affirmed.

RIZZI, P.J., and WHITE, J., concur.